Beverly Jane **BRODY**, Individually, etc., et al., Plaintiffs-Appellants,

v.

**AETNA CASUALTY & SURETY COMPANY** et al., Defendants-Appellees.

No. 29275.

United States Court of Appeals, Fifth Circuit.

Feb. 12, 1971.

Rehearing Denied June 11, 1971.

G. Harrison Scott, New Orleans, La., for Beverly Jane Brody and others.

John Pat Little, Charles Schwartz, Jr., Maumus F. Claverie, Jr., Michael F. Little, New Orleans, La., for Mickey K. Hargitay and others; Jerome Weber, Beverly Hills, Cal., of counsel.

Frederick J. Gisevius, Jr., New Orleans, La., Irwin Boscoe, Los Angeles, Cal., Bernard B. Cohen, Beverly Hills, Cal., for W. W. Pique, and others.

Paul V. Cassisa, New Orleans, La., for Hartford Accident and Indemnity Co., Stevens and Harrison.

John J. Weigel, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Ignatz G. Kiefer, James T. McLlelland, New Orleans, La., for The City of New Orleans, The Travelers Insurance Co. and J. T. McLlelland; John V. Baus, Donald O. Collins and James R. Murrell, III, New Orleans, La., of counsel.

Alvin J. Liska, City Atty., Beuker F. Amann, Asst. City Atty., New Orleans, La., for The City of New Orleans.

Curtis R. Boisfontaine, Edward P. Lobman, New Orleans, La., for Allstate Insurance Co.

George V. Baus, New Orleans, La., for Richard Rambo, Johnson Motor Line, and Aetna Casualty and Surety Co.

Before GODBOLD, CLARK and INGRAHAM, Circuit Judges.

GODBOLD, Circuit Judge:

After a lengthy trial, the jury found for the defendants in these cases brought for deaths and personal injuries suffered in a rear-end automobile accident. We affirm.

The accident occurred at approximately 2:30 a.m. on a straight two-lane stretch of U.S. Highway 90 on the outskirts of New Orleans, Louisiana. A car owned by Gus Stevens and driven by Ronald Harrison struck the rear of the truck-trailer rig of Johnson Motor Freight Lines driven by Richard Rambo. In the vicinity of the accident the City of New Orleans, by its employee James T. McLelland, was operating a mosquito fogging truck equipped with a revolving red light on top.

All vehicles were traveling west toward New Orleans, the Johnson truck and the Harrison car in the north lane, the fog truck on the shoulder on the other (south) side of the highway. Rambo observed the flashing light on the fog truck and reduced his speed by letting up on the accelerator and gearing down. The extent of his reduction is in dispute. He did not apply his brakes so as to actuate his brake stop lights, nor did he apply other red flasher warning lights mounted on the rear of the trailer. The Harrison car, traveling at a speed variously estimated at 60 to 80 miles per hour, struck the rear of the trailer, whose rate of movement could have been, under the evidence, as high as 35 to 40 miles per hour and as low as a full stop.

Killed were Harrison, Jayne Ottaviano (professionally known as Jayne Mansfield) and Sam Brody. Three minor children of Jayne Mansfield were injured. Three separate actions were brought for the deaths of Mansfield and Brody and

for the injuries to the minors, and were consolidated by the court.

Defendants were Johnson, its driver Rambo, and its insurer; The City of New Orleans, its employee McLelland, and their insurers; the parents of Harrison, Stevens (owner of the car and Harrison's alleged general employer), and their insurers.

Before trial, settlements were made by Stevens, the Harrisons and their insurers, and they were dismissed as defendants. After a 16-day trial, in which plaintiffs were given the broadest leeway by a patient and painstakingly careful trial judge in presenting the evidence in the most minute detail, the jury, by special interrogatories, found that Harrison was negligent, that Rambo was not negligent, and that McLelland was negligent but his negligence was not a proximate cause of the accident.

We are faced with an undiscriminating array of claims of error, ranging from substantial to trifling. We have considered every one,[1] but we discuss only those which require or deserve it.

#### 1.

On the twelfth day of the trial the court refused to allow plaintiffs to reopen their case to present the testimony of witness Malbrough, an investigator for one of the insurers, to testify concerning a diagram he had made of the accident scene pursuant to a conversation with McLelland. The diagram had been revealed to plaintiff's counsel long before trial and Malbrough's name given in answers to interrogatories which, though long delayed, were made before trial.

■■ The trial judge made his decision only after a hearing at which he gave an opportunity for counsel to be heard, and reviewed the circumstances leading to the request for reopening.

This case exemplifies the wisdom of the principle that reopening is a matter peculiarly within the discretion of the trial court. There were factors tending in both directions. We cannot say even that the judge was wrong or that had we been trial judges we would have decided differently, and certainly we may not conclude that he exceeded the broad discretion given him. *Cf.* Merritt-Chapman & Scott Corp. v. Frazier, 289 F.2d 849 (9th Cir. 1961). Under the same rule, there was no error in refusing to allow plaintiffs to reopen to present the testimony of Cockfield.

#### 2.

■ The court refused to allow testimony of witness Vinot that on numerous occasions before the accident he had seen the City's fog vehicles emitting fog while on the highway shoulder in the vicinity of the accident. Appellants do not contend that Vinot's testimony was independently admissible as evidence of lack of care but in contradiction of testimony of Carmichael, superintendent of the City's fogging operations, that for three years prior to the accident the City did not fog on the shoulders in this area. Carmichael did not so testify. He described regulations promulgated by him which forbade fogging on the shoulders of high speed highways, but he did not testify to past observance or lack of observance of the regulations.

#### 3.

■ The court did not err in submitting to the jury the issue of whether Harrison was negligent and whether such negligence was a proximate cause of the accident. Appellants' theory is that as a matter of law Harrison was not the servant, borrowed or otherwise, of Brody or Mansfield, so that his negligence is irrelevant. There were numerous conflicts in the testimony concerning the nature and details of Harrison's rela-

---

1. Numerous jury charges are claimed to be erroneous. With respect to many of them, it is impossible to tell from the appendix or the briefs whether the charge was objected to and at what point. We have considered each questioned charge as though there was a timely objection to it.

tionship with Stevens and of the arrangements between Brody and Harrison and Stevens for transporting Brody and Mansfield and the children from Biloxi, Mississippi to New Orleans, and of the extent to which the trip to New Orleans was for Stevens' benefit on the one hand and the personal benefit of Brody and Mansfield on the other. Kiff v. Travelers Ins. Co., 402 F.2d 129 (5th Cir. 1968), relates to the court rather than the jury making findings on borrowed servant relationship where the facts are uncontradicted and unimpeached. It has no application here.

### 4.

■ As part of the full charge on proximate cause the court said

"Proximate cause" means that not only must the negligent act or omission played [sic] a substantial part in bringing about or actually causing the injury or damage, but also that the injury or damage was either a direct result or a reasonable probable consequence of the act or omission.

One seeking to recover must show that the cause imposing liability is more reasonable than other likely causes. If you find negligence on the part of anyone, then you must next consider in connection with proximate cause whether it is established by a preponderance of the evidence that it is more likely that the accident happened as a result of that particular negligence than as a result of some other cause, such as the negligence of someone else.

Appellants urge that the second paragraph is contrary to principles of concurrent negligence, that since the jury found both McLelland and Harrison neg-

ligent it may have found McLelland's negligence not a proximate cause because it considered Harrison's negligence the "more likely" cause. However, the paragraph must be considered along with the rest of the charge on proximate cause, the whole of which was developed in an orderly and rational sequence. It commenced, in the first-quoted paragraph, with an explanation of what is necessary for the negligence of one person to be a proximate cause and, in the second-quoted paragraph, articulated the distinction between proximate and remote (or "less likely") cause. In the second paragraph thereafter the court correctly described the interplay of the negligence of two or more persons contributing concurrently as proximate causes. *See* Dixie-Drive-It-Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962).

### 5.

■ It is claimed that in many respects the court erred in charging on the highway stop laws and the "slow speeed" law of Louisiana. Appellants seem to say that, in the charge on the stop law,[2] the court erred in stating that the signal, required when a driver stops or suddenly decreases his speed, need be given only to the driver of a vehicle "immediately to the rear." This is precisely the phrase in the statute. The statute is not made inapplicable by Vowell v. Manufacturers Casualty Insurance Co., 229 La. 798, 86 So.2d 909 (1956), which concerned a different duty—that of the vehicle, stopped at night on the highway in the lane of traffic for an extended period, to keep its tail light burning. Obviously that duty is for the benefit not only of those "immediately to the rear"[3] but also those further to the

2. The court was quoting La.R.S. 32:104 (C):
 "No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is opportunity to give such signal."

3. Possibly "immediately to the rear" refers to direction rather than space, that is to vehicles directly behind as opposed to those approaching from the front. For purposes of discussion, we will assume, as do plaintiffs, that it refers to spacing.

rear who may approach the scene during the time the vehicle remains parked on the highway.

 The court correctly charged on the provisions of the "slow speed" statute [4] and referred to like provisions of the city ordinance. The contention that the court should have charged the jury that Rambo was in violation of the "slow speed" statute and guilty of negligence per se is frivolous. "Whether or not the speed in a particular case is slow enough to be in violation of the regulatory statute * * * must necessarily be determined in relation to all of the facts and circumstances existing in that particular case." Fairbanks v. Travelers Ins. Co., 232 So.2d 323 at 328 (La. App. 1970). This was properly a question for the jury, and there is evidence to support its conclusion. Also, it was for the jury to determine whether, under all the circumstances, the flashing red light on the fog truck constituted a special hazard exempting Rambo from the "slow speed" rule.

 Appellants appear to make another contention based on interplay of the stop law and the "slow speed" law. The court gave this charge:

As I have told you, the law requires the operator of a vehicle to drive with reasonable prudence. When a motor vehicle runs into the rear end of a properly lighted vehicle in front of it, and the passengers in the following vehicle seek to recover, the burden is on them to prove that the lead vehicle stopped or suddenly slowed negligently and without warning, or that in some other way it negligently created a hazard or emergency for the following vehicle. Otherwise the necessary conclusion is that the driver of the following vehicle breached his duty to see the lead vehicle, to maintain a proper lookout, and to keep his vehicle under control considering all the circumstances; or that the accident was unavoidable insofar as the preceding vehicle is concerned.

Appellants say that the phrase "properly lighted" was an instruction that the Johnson truck had given proper stopping or slowing signals. We do not agree. We understand "properly lighted" to refer to running lights (an issue not here in dispute), while the later phrase "without warning" refers to giving the warning signal required by the stop law.

 Second, appellants seem to say, without supporting authority, that enactment of the "slow speed" law has caused the quoted charge to be incorrect in any event. Appellants concede that to recover on their "slow speed" theory the burden was on them to show that the truck was going at a slow speed in violation of the statute. This would be within the phrase of the charge "or that in some other way it negligently created a hazard or emergency for the following vehicle." In any event, a plaintiff who relies on the "stop or sudden slowing" statute and the "slow speed" statute as alternative grounds for liability may not escape the burden of proof incident to the former on the basis of his alternative claim of the latter.

### 6.

 The court allowed Carmichael to answer over objection a single question whether flashing red lights or revolving lights were utilized in parishes adjoining New Orleans in mosquito control operations, to which Carmichael answered "Yes." The court then carefully explained to the jury that the ordinances in other parishes might differ, that what was a violation of law was governed by legal principles and not by the fact that other persons might violate it; and he explained the state statutes which forbid flashing red lights visible from the front except on certain emer-

---

4. From La.R.S. 32:64(B), providing that except when certain special hazards exist that require lower speeds, "no person shall operate or drive a motor vehicle upon the highways of this state at such a slow speed as to impede the normal and reasonable movement of traffic."

**1154**

gency vehicles. We perceive little relevance to the question, but the careful instructions of the court removed the prejudice, if there was any. In our opinion this was a far more satisfactory procedure than simply telling the jury to disregard the question and answer.

### 7.

There are other claims of error in jury charges on which we will not comment, other than to say that they are disposed of by what has been said above or are without merit or frivolous. These include refusal to give a directed verdict on liability of McLelland and Rambo and their employers; sudden emergency; contributory negligence; intervening events; duties of guest passengers; duty of motorist meeting a red light; requirements of Louisiana law for flashing red light on an emergency vehicle; and differentiation between "highway" and "roadway."

There was no reversible error in consolidating the cases. The claim that appellants were deprived of due process by being allowed a total of only two and one half hours to argue is frivolous. There was no error in the use, specifically sanctioned by the Federal Rules of Civil Procedure, of special interrogatories.

Affirmed.