364 F.2d 28
 1 A.L.R.Fed. 909
 ARTHUR MURRAY, INC., Petitioner,
v.
The Hon. John W. OLIVER, United States District Judge for
the Western Districtof Missouri, Respondent.
EDUCATIONAL CREDIT BUREAU, INC., and Tuition Plan, Inc., Petitioners,
v.
The Hon. John W. OLIVER, United States District Judge for
the Western Districtof Missouri, Respondent.
 Nos. 18264, 18265.
 United States Court of Appeals Eighth Circuit.
 July 11, 1966.
 
 Allan L. Bioff, of Watson, ess, Marshall & Enggas, and Wm. H. Curtis, of Morrison, Hecker, Cozad & Morrison, Kansas City, Mo., for petitioners.
 Elton L. Marshall and Landon H. Rowland, of Watson, Ess, Marshall & Enggas, Kansas City, Mo., Allan L. Bioff, Kansas City, Mo., on motion for leave to file petition for writs of mandamus, etc. in case No. 18264.
 J. Philip Kirk, Jr., of Morrison, Hecker, Cozad & Morrison, Kansas City, Mo., William H. Curtis, Kansas City, Mo., on petition for leave to file petition for writ of mandamus, etc. in case No. 18265.
 Ralph M. Jones, of Swanson, Midgley, Jones, Blackmar & Eager, Kansas City, Mo., for respondent.
 Before JOHNSEN, Senior Circuit Judge, BLACKMUN, Circuit Judge, and YOUNG, District Judge.
 JOHNSEN, Senior Circuit Judge.
 
 
 1
 A writ mandamus or prohibition is sought from us in respect to an order appointing a special master and referring some special functions to him in a suit for treble damages under the antitrust statutes, 15 U.S.C.A. 1, 2, and 15. The petitioners here (there in number) consist of the defendants in the suit, and the respondent is Judge Oliver, of the District Court for the Western District of Missouri.
 
 
 2
 The order involved was entered by Judge Oliver on his own motion a year and a half after the case had been the subject of a jury-waived trial and been submitted to him on the merits by the parties. Before the trial was hled, processes of discovery, taking of depositions and pretrial conferences had been engaged in, as generally incident to the preparation and progression of such a protracted case toward disposition. And in taking submission, the Court had consideredly ruled that both on the issue of liability and on the question of damages the evidence was sufficient 'to send the case to the trier of the fact'. As Judge Oliver further expressed it at the time, 'In other words, if I had a jury in the case, and * * * I had to pass on the question of whether * * * the case should be submitted to the jury, I would submit it to the jury.'
 
 
 3
 The intention to appoint a special master and make a reference was first made known in a Memorandum Opinion (reported in Reserve Plan, inc. v. Arthur Murray, Inc., D.C., 38 F.R.D. 23), filed after a deliberation as noted above, in which the Court determined the issue of antitrust violation against the defendants; held that plaintiff was shown to have been damaged by the defendants' illegal acts; confirmed its previous ruling that the record contained such evidence of damages as could afford the basis for the rendering of a substantial verdict in plaintiff's favor; but declared that the task of analyzing the books, records, accounting data, and audit reports which were in evidence, for purposes of satisfactorily arriving at the profits lost by plaintiff from the business of which defendants had caused it to be illegally deproved, was one in which the Court did not feel capable or called upon to engage without the addistance of an expert accountant as a special master.
 
 
 4
 The Memorandum Opinion, however, did not stop here. The Court deemed it insufficient to have the reference limited to an accounting process and result on the materials which the parties had chosen to place in evidence and made the basis of their submission of the case. It went on to state that it was not sure that the record had been made to contain all of the pertinent data and material which was capable of being produced and might be of assistance in arriving at a fair determination of the damages involved, and particularly 'as to what profits were actually made or ultimately resulted from the business illegally taken from the plaintiff'. It therefore desired to have the master further engage in a scrutiny of other indicated material, which was not in evidence but which it directed the defendants by a supplemental order to deposit with the Clerk for the master's use, consisting of 'all accounting records, income tax returns, balance sheets, contract documents, business and accounting correspondence and the like', which could be reflective of the profits derived by defendants Educational Credit Bureau, Inc., and Tuition Plan, Inc., from the business which plaintiff had been deprived of, involving some 45 accounts.
 
 
 5
 Plaintiff was engaged in the finance business, with a substantial part of its operations consisting in the handling of paper given for dancing lessons from studios which were licensees of defendant Arthur Murray, inc. Defendants Educational Credit Bureau, Inc., and Tuition Plan, Inc., like plaintiff, were finance companies, but handled only paper of Arthur Murray, Inc. licensees, and were owned in part by stockholders and officers of Arthur Murray, Inc., or relatives of them. Arthur Murray, Inc. had sent out a letter to all its licensees directing them to channel their paper thereafter through the two defendant finance companies, with the consequence, as found by the Court, that plaintiff lost the business which it had previously had from such licensee customers. Concerted action on the part of the defendants was alleged and held by the Court to have existed in relation to the effecting of this result.
 
 
 6
 The Court's order directed the master to file a preliminary report on (a) whether it was possible from the books and records of plaintiff in evidence to make a reasonable estimate and approximation of the profits which plaintiff had realized on the licensee business involved prior to the sending out of the letter by Arthur Murray, Inc.; (b) whether it was possible from other material not in evidence, but directed to be made available by the defendants to the master, as referred to above, to make a reasonable estamate and approximation of the profits realixed by the two defendant finance companies on the business of which plaintiff had been deprived; and (c) also whether on the basis of the material referred to in (b) a purchase which had been made of the capital stock of a previous licensee-finance corporation could fairly be said to help indicate the value of the licensee business of which the two defendant finance companies had become improperly possessed as against plaintiff.
 
 
 7
 If the master should be of the opinion that additional factual data was necessary to enable him to reach any of these results, he was directed to indicate what he regarded as being thus required. The order also was left with an open-end provision that 'The Special Master shall perform other particular acts and shall report on other particular issues that the Court may from time to time direct and order'. And to this the Court added the declaration that 'We are fully convinced that everyone concerned will know much more about the probable future course of this litigation after we shall have received the preliminary report of the Special Master'.
 
 
 8
 The immediately operative aspect of the order in its direction to the master to engage in an initial scrutiny and report could perhaps be regarded as not being of such substance or of such certainty as to any further consequence from the order, so that we would be warranted in refusing to engage in any present extraordinary-writ consideration. But the parties all accept as a reality that the order is designed and will in fact operate to produce some form of determination by the master of the profits of the plaintiff and of the profits of the defendants on the business involved; that it therefore will result in the trial being reopened for the receipt of such evidence; and that it will necessitate further the Court's affording opportunity for rebuttal or other proper attack by a party demanding it in relation to the master's auditing result and testimony on both of the classes of material covered by the order.
 
 
 9
 The situation thus is presented to us as one in which after a five-years pendency, after an 18-months submission, and with a record held by the Court to contain such probative substance as to establish certainty of substantial injury and to afford basis for making a substantial damage award, the parties now are being subjected to a reference of analysis and appraisal on the part of a master, not merely as to evidence contained in the record, but also as to materials outside the record, and with the probable substantial expense and conventional delay normally incident to any reference procedure.
 
 
 10
 In this connection it is entitled to be noted that the plaintiff had introduced evidence by an expert accountant as to what plaintiff's profits had been generally upon its business, and evidence by one of its officers as to what he regarded its profits on the particular business as having been in relation to the handling of its other accounts. The audit reports which had been made of plaintiff's business during all of the years involved had been placed in the record. All of this evidence was received by the Court as being probatively competent with the weight which would be accorded it in arriving at a damage result being left, of course, to the Court's subsequent overall consideration.
 
 
 11
 It further may be noted that the record shows that the plaintiff had deliberately chosen not to place in evidence the defendants' books and records or the audit reports thereon or otherwise to attempt to show what the defendants' profits had been on the business involved. It should be added, however, that the plaintiff has, since the filing of the Memorandum Opinion, given acquiescence to the Court's expressed desire and intention to include this aspect in the reference, and that it is here seeking to sustain the Court's order as made.
 
 
 12
 Petitioners contend alternatively (1) that the Court was without jurisdiction to appoint a master and make the reference involved in any of its aspects, on the proceedings which had been had and at the stage which had been reached in the case, and (2) that if the Court was possessed of the power to do what it did, then the order was beyond the scope of reasonable judgment or discretion in the particular situation, so as to amount to an abuse in the making of the reference.
 
 
 13
 We do not believe that it can be held that the Court was legally without power or jurisdiction to make the order it did, or some particular aspect thereof. Petitioners are unable to cite any decision, and we have found none, on which such a holding would be entitled to be predicated. Rather, we think the question is whether-- at the stage which had been reached in the litigation; with the record recognized as having probative adequacy to afford basis for a substantial damage award; on the nature and object of what the Court was seeking to have done; and in relation to the general thrust of La Buy v. Howes Leather Co., Inc., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957) at reference practice-- the resort here made to the reference field was so inappropriate in the situation as to constitute an unreasonable exercise of the Court's power and discretion and as to call upon us in the interest of judicial administration to engage in extraordinary-writ intervention.
 
 
 14
 Rule 53(b) of the Civil Rules, 28 U.S.C.A. provides:
 
 
 15
 'A reference to a master shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury, save in matters of account, a reference shall be made only upon a showing that some exceptional condition requires it'.
 
 
 16
 It will be noted that the Rule is directed at the use of reference as a procedural vehicle in general. Every reference to a master, no matter what the litigation incident involved may be, and regardless of what may be the form or scope of the task sought to be referred, is within the application of the Rule. On the Rule's language, it is clear that liberality is not intended to be afforded to engage in any auxiliary reference in non-jury or jurywaived cases, 'save in matters of account'. As to all other aspects, whether the task involved be large or small, only 'exceptional condition' is entitled to prompt a court to engage in reference of any form.
 
 
 17
 The considerations for removing accounting tasks from the 'exceptional condition' standard of the Rule have been rationalized by Judge Kaufman, in his article on 'Masters in the Federal Courts: Rule 53', 58 Columbia Law Rev. 452, 458 (1958):
 
 
 18
 'Generally, an accounting involves a mechanical application of general investigatory and accounting principles and is often required under circumstances where much exploratory work in the books and records is essential. To impose this duty on the court would result in a severe drain on limited judicial man-hours which could be more profitably exploited in other avenues of judicial endeavor. No peculiar judicial talent or insight is required, and errors in accounting lend themselves to detection and correction on review by the court.'
 
 
 19
 A substantially similar recognition was made by the Supreme Court in the La Buy case, supra, 352 U.S. at 259, 77 S.Ct. at 315, when it said:
 
 
 20
 'We agree that the detailed accounting required in order to determine the damages suffered by each plaintiff might be referred to a master after the court has determined the over-all liability of defendants, provided the circumstances indicate that the use of the court's time is not warranted in receiving the proof and making the tabulation'.
 
 
 21
 The reference here was not, of course, of the issue itself of damage amount, but of aspects of probative indication thereon in which the Court desired to have the master auxiliarly engage. As to the amount of the profits which had been realized by plaintiff, the reference was, as noted, one for an examination, analysis, computation and report on books and records in evidence, with presumably an intended allowance of the routine incidents of inquiry and verification ordinarily entering into an auditing task as a matter of assuring understanding and correctness in the result portrayed.
 
 
 22
 As to this aspect of the order, the reference to have an auditing result produced was one which came within the liberal proviso of Rule 53(b) as to 'matters of account' in general. We thus do not feel called upon, for purposes of this extraordinary-writ consideration, to engage in any narrow scrutiny of Judge Oliver's desire in the circumstances to have such an accounting made. The books and records were in evidence, and from the expressions in the conferences contained in the record, it is apparent that Judge Oliver genuinely felt the need, after having personally wrestled with the books and records and auditing reports thereon, to have a more specific accounting penetration and analysis made as to the profits involved than had been provided by the summaries and interpretations of this general evidence by plaintiff's witnesses.
 
 
 23
 We accordingly hold that as to this accounting reference, even in the relationship thereof to long-closed trial and further-delayed disposition, there cannot be said to be involved such impropriety of reference resort as to be entitled to any writ consideration.
 
 
 24
 Incident to the discussion which has been made of Rule 53(b), a comment may in passing be added to our earlier statement that we do not regard the question of power or jurisdiction as being at all involved, but only the question of propriety of reference resort in the circumstances.
 
 
 25
 Petitioners have made the technical argument that in using the language 'in actions to be tried without a jury,' the Rule should be regarded as prohibiting the making of any reference whatsoever after a case has been tried and submitted, even of auxiliary accounting incident on evidence in the record, and as therefore involving a jurisdictional limitation. There is nothing in the Notes of the Advisory Committee on the Civil Rules, 28 U.S.C.A., to suggest that the expressions 'in actions to be tried without a jury' and 'in actions to be tried by a jury' were intended to have any other significance than as descriptions or characterizations of the two classes of cases in distinction from each other. Any intention that a connotation more than this should be given to them would be a matter of such significance that we think it only natural to presume that it would commentarily have been pointed out.
 
 
 26
 Beyond this, when the language of the Rule is read in its whole, it seems clear that the concern of the Rule is with the considerations which should govern a court in any exercise of its traditional reference power. Thus it is emphasized generally that a reference 'shall be the exception and not the rule'. As to jury cases, 'a reference shall be made only when the iddues are complicated'. And as to the non-jury or jury-waived cases, 'a reference shall be made only upon a showing that some exceptional condition requires it'. All this is language of relative and unabsolute situation. It leaves the making of evaluative judgment open to varying circumstances. The Rule, therefore, cannot in our opinion be argued to deal with the power to engage in reference judgment and action, but only with the responsibility which should underlie any resort to the field.
 
 
 27
 Moving on to the remaining aspects of the Court's order on this basis, the further reference involved differs from that previously discussed, in that while it had an accounting nature, its fundamental significance in the situation lay in its being a commissioning of a master to make an exploration and report on material outside the trial record and as to factors which could have at most collateral relevance and incidence on the damages which the plaintiff had sustained.
 
 
 28
 As will be recalled, the purpose of this part of the reference was (1) to obtain evidence as to the profits which the defendants had realized on the business involved, and (2) to have the master engage in accountant judgment and report on whether a purchase which had been made of the capital stock of a previous licensee-finance corporation would be capable of helping to indicate the value of the licensee business of which the plaintiff had been deprived.
 
 
 29
 The profits which the defendants had made on the business involved could have relevance, not on the basis of their amount being subject to being taken away from the defendants and awarded to the plaintiff as such, nor on the basis of their amount representing the measure of what the plaintiff would be entitled to recover, but solely on the basis, as recognized in Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251, 257-258, 66 S.Ct. 574, 577, 90 L.Ed. 652 (1946), that they could probatively tend to provide some indication of the extent of plaintiff's loss, if comparability or similarity existed between the plaintiff's and the defendants' businesses.
 
 
 30
 As to the commission to the master to make exploration, evaluation and report on whether the capital-stock purchase referred to would be capable of helping to indicate the value of plaintiff's lost licensee-business, this, on the uncertainty and speculativeness involved, would have to be regarded as a judicial prospecting for further evidential possibilities, with the use of a reference to have the probative quest made.
 
 
 31
 A court has, of course, the general power to reopen a case, either on motion of a party or on its own motion, while the matter is still under advisement, for the receipt of further evidence. 9 Cyclopedia of Federal Procedure (Third Edition) 31.108, at p. 435. See also Paine v. St. Paul Union Stockyards Co., 28 F.2d 463, 467 (8 Cir. 1928); J. W. Paxson Co. v. Board of Chosen Freeholders, 201 F. 656, 662 (3 Cir. 1912). And only rarely perhaps where this has been done and the question comes up by way of appeal from the final judgment is the discretion so exercised likely to be held to have constituted an abuse. Cf. 6 Moore's Federal Practice, 59.04, at p. 3728.
 
 
 32
 But this may not be taken to imply that a court is entitled to engage freehandedly in adding evidence to a record on its own motion. In the spirit of our adversary system, it is not the business of a court to make additions of evidence in a submitted case on its own motion other than as there may be some element of such probative importance that its addition will prevent a miscarriage of justice from occurring in the situation.
 
 
 33
 It is not for a court to engage in such action merely to have the record meet its own trial standards and thereby make its task of disposition less onerous or more gratifying. There are but few cases in which a judge working with a trial record does not see some way in which his task of disposition could have been made easier. And above this, from the very nature of the judicial role, it is not given to a judge to engage in a prospecting quest for other evidence possibility to add to a record, nor counterpartly to appoint a master to make such a discovery pursuit for him. Thus, such evidence as a judge may properly seek to have added to a record on his own motion should appear both to be important as a matter of preventing injustice and to be reasonably available.
 
 
 34
 Repeating-- here, as to the first aspect of reopening and reference involved, the matter was merely one of having an accounting analysis and compilation made on evidence already in the record, and as to this we are unable to see any reference abuse in the situation. As to the reference on the capital-stock sale, this was fundamentally, as we have characterized it, a prospecting quest by the Court, through the use of a master, for further evidence possibility, with the additional aspect that even if the quest should prove out, such evidence would be capable of at most only auxiliary and not crucial probativeness in the situation. As to the reference made for procuring evidence of the defendants' profits, this too could perhaps be regarded as somewhat of a judicial quest, since it was not a certainty that such a separate profit allocation as the Court desired would be capable of forthcoming therefrom. But as has been noted, the parties have accepted as a reality that such an auditing result will be produced, and we shall treat this aspect as involving apparently available evidence.
 
 
 35
 So treating it, however, the fact nonetheless is that evidence of the defendants' profits was in the situation a matter of adding only something of collateral or auxiliary probativeness. With the record recognized as containing evidence on which a substantial award of damages could be made, this evidence could merely serve as an element of aid or fortification to the Court in the assessment of damages. We do not believe that the Court's desire to have such aid or fortification, where the record contained an adequate probative basis for legally arriving at an award, could be said to present a situation of 'exceptional condition', as a warrant under Rule 53(b) for the Court's making exercise of its reference power.
 
 
 36
 It should be sufficiently clear, we think, from Eastman Kodak Co. of New York v. Southern Photo Materials co., 273 U.S. 359, 377-379, 47 S.Ct. 400, 71 L.Ed. 684 (1927), and Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 562-566, 51 S.Ct. 248, 75 L.Ed. 544 (1931), that the task and responsibility involved in arriving at the amount of damages in an antitrust case are not as formidable and precarious as the wrongdoer ordinarily, in last line of defense, seeks to make them out to be. When the fact is certain that antitrust injury has been inflicted on a party, it is sufficient as a basis for arriving at the damages that the evidence contains probative elements from which on reasonable inference their extent can with judgment be estimated. Cf. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 688, 66 S.Ct. 1187, 1193, 90 L.Ed. 1515 (1946); Palmer v. Connecticut Railway & Lighting Co., 311 U.S. 544, 560-561, 61 S.Ct. 379, 384-385, 85 L.Ed. 366 (1941).
 
 
 37
 We can sympathize with the Court's conscientious desire here to have as full a probative basis as possible for arriving at the damages involved. But its responsibility to arrive at a determination in the tried case was no different than would be that of a jury, except that the Court had to set out its findings and conclusions, and that it could, notwithstanding the submission, seek to have some element of necessary and available proof added to the record to avoid having to do an injustice in the situation.
 
 
 38
 Summarizing, on the lack of 'exceptional condition' as a warrant therefor under Rule 53(b); in the interest of judicial administration to not leave the door open to such auxiliary use in a submitted situation on unnecessary incidents; in relation to the expense and delay ordinarily attendant upon reference procedure; and with regard for the right of the parties not to have disposition of the case thus unnecessarily delayed-- we believe that, except as to the auditing of plaintiff's books and records, the reference made should not be permitted to stand and proceed.
 
 
 39
 It may not be inappropriate to recall here the reminder made by the Supreme Court in Stoll v. Gottlieb, 305 U.S. 165, 172, 59 S.Ct. 134, 138, 83 L.Ed. 104, that 'It is just as important that there should be a place to end as that there should be a place to begin litigation'.
 
 
 40
 The reference made in respect to plaintiff's books and records will be permitted to stand, and the petition in each of the cases here for a writ on this aspect is denied. As to the other aspects of the reference, the order is directed to be vacated.