Cleo CALAGE, Plaintiff-Appellant,

v.

UNIVERSITY OF TENNESSEE et al., Defendants-Appellees.

No. 75–1931.

United States Court of Appeals, Sixth Circuit.

Argued June 18, 1976.

Decided Nov. 3, 1976.

L. Caesar Stair, III, Bernstein, Dougherty & Susano, Charles D. Susano, Jr., Knoxville, Tenn., for plaintiff-appellant.

Ronald C. Leadbetter, Beauchamp E. Grogan, Knoxville, Tenn., for defendants-appellees.

Before McCREE, LIVELY and ENGEL, Circuit Judges.

ENGEL, Circuit Judge.

Appellant Cleo Calage commenced this action in the district court under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5 et seq., charging that defendants unlawfully discriminated against her be-cause of her sex while she was employed by the University of Tennessee's Food Service Department between 1967 and 1973. Essentially she claims that the University failed to grant her promotions during her employment, failed to pay her the same wages for the same work performed by men, unlawfully maintained sex job classifications, and finally, unlawfully discriminated against her in conferring certain fringe benefits.[1]

In a bench trial, District Judge Robert L. Taylor, after reviewing all of the evidence, held that plaintiff was not the object of unlawful discrimination under Title VII and accordingly dismissed the complaint.

On appeal, Calage alleges that the district judge abused his discretion in reopening proofs sua sponte after the case had been submitted, but before entry of judgment. She also claims that the judge's determination that there was no discrimination was clearly erroneous.

The case was tried on March 12, 1975. Plaintiff's proof consisted of her own testimony and an extensive stipulation of facts and exhibits. Testifying for the University were Norman D. Hill, Director of the University Food Services Department, and Robert Norris, Manager of the University of Tennessee Center. Both parties thereupon rested and after final argument, the court took the case under advisement, requesting counsel to submit post-trial briefs containing proposed findings of fact and conclusions of law.

The following day, the district judge, through the Clerk of the Court, advised counsel for the parties that he desired further evidence from the University in explanation of the disparities contained in certain exhibits which apparently disclosed favored treatment of men over women in comparable managerial positions.[2] In re-

1. Plaintiff makes no claim that the defendants' hiring practices are discriminatory. Also, she does not claim that her subsequent discharge was discriminatory. Plaintiff withdrew her request for injunctive relief when the trial commenced. We, therefore, conceive that we are left with her claim for an appropriate award for back pay, costs and attorney fees.

2. The text of the notice:

Judge Taylor requested that I advise you that Exhibits 1 through 16 and 26 show some disparities in the wages of men and women,

sponse to this request, an affidavit by Norman D. Hill with attached exhibits A and B was submitted by the University. When the plaintiff refused to stipulate that the affidavit and exhibits might be treated as evidence, and instead moved to strike the affidavit, the court granted the motion but at the same time, over strong objection by plaintiff, ordered the case reopened for additional evidence on the "limited question of salaries for the females and males during the period that is involved in the lawsuit". The order also authorized additional discovery by plaintiff prior to the reopened hearing. At that hearing, both sides presented further testimony.

■ The proofs at the trial, and especially the inferences to be drawn from them, were in sharp dispute. Calage's proofs were essentially twofold. First she claimed discrimination, against herself personally as a female, in the form of the alleged preferment of one C. S. Pritchard, a male, who she claimed was consistently paid a higher salary for doing essentially the same work. Second she claimed that she was a victim of discrimination generally between males and females in the department. While this was not a class action, such proof on this latter claim was admitted, and properly we think, as relevant to plaintiff's individual case. *Parham v. Southwestern Bell Telephone Co.,* 433 F.2d 421, 425 (8th Cir. 1970).

Plaintiff Calage was hired by the Food Services Department of the University on September 13, 1967 as catering supervisor. Before her employment at the University, Calage had been a catering manager in a private club in Knoxville. Before that, she was manager of a country club in Oak Ridge, Tennessee. Plaintiff's qualifications in the area of food services are unchallenged.

In the fall of 1966, the University had hired one Carlton Pritchard who assumed the duties of catering manager. Before hiring Pritchard, the University had had a catering department, but was desirous of reorganizing and upgrading that program since it conceived that its public image and acceptance were unsatisfactory. Pritchard had impressive credentials. He held a degree in public relations from Boston University, was training consultant for the Holiday Inn of America, had managed several country clubs, and had acted as a State Department consultant to Jordan where he trained citizens of that country in food service techniques. When first hired, Pritchard was given the title of Manager of Catering Services at a salary of $8,200 a year. When plaintiff joined the staff in October of 1967 as a supervisor of the catering services, she received a salary of $5,200 and was responsible to Pritchard. In the fall of 1968, Pritchard was transferred to the U. T. Center as Manager of that building's student food services. Calage then assumed the primary responsibility for the catering services at a salary of $5,800, but still reported to Pritchard. Plaintiff's principal claim of discrimination is that she should have been paid a salary equal to Pritchard's former salary when he was the manager of the catering services because she assumed in fact if not in title Pritchard's former responsibilities. Thus she claims that she was entitled to a salary of at least $8,200. Calage continued to do approximately the same work in the catering department for the balance of her service with the University, although her title was changed to that of Assistant Manager in 1969 and she received a salary of $6,600. At the time of her termination, plaintiff was being paid at a rate of $8,300 per year. Essentially the balance of plaintiff's case is a comparison of the duties and salaries of female employees and the male employees in the University's Food Services Depart-

the disparities apparently favoring the men for like managerial positions, to-wit, like positions of supervisor, assistant manager and manager. The UT witnesses gave as an explanation that the responsibilities and duties upon the part of the men were greater than those of the women. The Court is not satis-

fied with such a generalized explanation. The Court requests counsel to take up each position and to point out with requisite specificity the reasons for such alleged disparities appearing in the above exhibits.
Judge Taylor has requested that the foregoing be submitted forthwith.

ment. In addition to her own testimony, plaintiff offers extensive organizational charts which she claims proves that the males were consistently being paid a higher salary for substantially the same work.

It is basically Calage's claim that a pattern of discrimination is shown by the disparity of salaries between men and women who possess the same titles. On the other hand, it is the position of the University that such comparisons are incomplete and that where a disparity appears to be at least facially supported by the organizational charts, it is refuted by an examination into the requirements of the particular job involved and by the qualifications of the individual occupying it.

Plaintiff's position was crystalized on the date of trial when her counsel introduced as exhibit 26 a year-by-year compilation of the comparative and average salaries paid male and female employees according to the title they enjoyed at the time. It was this exhibit, based only upon a comparison of titles, which undoubtedly created the uncertainty in the trial judge's mind as he commenced his deliberations and which prompted him to call for additional explanation.

After a detailed review of the evidence, which we shall not repeat here, Judge Taylor found that Pritchard not only possessed significantly higher qualifications than Mrs. Calage, but that the salary disparity was also justified by substantially different duties assigned to each.

"While not wishing to adjudge the professional capabilities or performance of either plaintiff or Pritchard in food services, it is evidence that Pritchard in 1966 possessed higher qualifications than plaintiff and, while plaintiff may have assumed a greater work load with the assumption of her duties at the Hermitage Room at the University Center in 1968, her work as head of the catering department, whether denominated by the University as supervisor or manager by plaintiff, was of a substantially different nature from 1968 to 1973 than Pritchard's job was from the Fall of 1966 until transferred in 1968. Pritchard was hired for and charged with the responsibility of developing from the ground floor a viable and self-sufficient catering department and his singularly unique background equipped him for this task. Not until this department had undergone considerable evolution did plaintiff assume the responsibilities of managing the department; however, by that time the catering department was an established entity due to the efforts of Pritchard. It was an ongoing rather than developing service. The skills and demands were different and, accordingly, in the opinion of the Court, justified the wage disparity between plaintiff and Pritchard. Thus, the amount or degree of skill required to perform Pritchard's job in 1966 to 1968 when he developed the catering program were substantially different from those of plaintiff when she assumed the position in 1968."

The balance of Calage's claim was characterized by the trial judge as an attempt, in the form of exhibits 1–16 and 26, "to establish a prima facie case of sex discrimination by showing that men and women of the same managerial title were paid disparate salaries. *See Reed v. Arlington Hotel Co.,* 476 F.2d 721, 723 (8th Cir. 1970); *Spurlock v. United Airlines, Inc.,* 475 F.2d 216 (10th Cir. 1972)." Thus, as Judge Taylor saw it, plaintiff was urging that the

manager of the U.T. Food Center Food Service must receive the same pay as the manager of the Presidential Court Food Service and a supervisor in the University Center must receive the same as a supervisor in the Presidential Court. In essence, equal placement on an organizational chart demands equal pay. Such a position necessarily rejects the traditional variables that are injected into a determination of salary such as seniority, experience, credentials, job complexity, mental or physical stress, management skills, etc.

After citing the specific language of 42 U.S.C. § 2000e–2(h) and that section's incorporation of 29 U.S.C. § 206(d), the trial judge rejected the theory that equal title demands equal pay, and instead observed

that "job content and not title are thus determinative". He therefore reviewed exhibit 26 against the background of the job responsibilities and individual qualifications of the individuals.

On the basis of that comparison, the trial judge concluded that plaintiff's contentions had been disproved, that there was no evidence of unlawful discrimination against females in the department and that, in fact "women were able to occupy top management positions in the Food Services Department and that progression was not a rarity", citing specific examples of women within the department who had received promotions and higher salaries than other men and than plaintiff herself, based upon their performance, background and responsibility assumed.

 Both parties are agreed that the decision to reopen the case to receive additional evidence is committed to the discretion of the trial judge. *Zenith Radio Corp. v. Hazeltine Research*, 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971); *Ramsey v. UMW*, *481 F.2d 742 (6th Cir. 1973), cert. denied*, 414 U.S. 1067, 94 S.Ct. 576, 38 L.Ed.2d 473; *Sandusky Foundry & Machine Co. v. Wickliffe*, 483 F.2d 695 (6th Cir. 1973). See also generally, Moore's Federal Practice, § 59.-04[13]. Recognizing this discretion in the judge, plaintiff nevertheless claims that it was a discretion which was abused under the circumstances here. It is apparent from plaintiff's brief that she considers the trial court's request of March 13, which expressed a concern over the disparities in the wages between men and women as shown by the exhibits, as indicative of a determination by the court that at that time plaintiff had made a prima facie case entitling her to relief. Inferentially therefore, the court, harboring some predisposition in favor of the University, determined to give it a second chance to explain the disparities, a practice which plaintiff contends "did not comport with the interest of fairness and substantial justice".

Our review of the record of the testimony, correspondence, and the affidavits of counsel does not lead us to the same conclusion.

We observe, in the first place, that no claim of personal bias on the part of the trial judge is made or shown by the proofs. While, indeed, Messrs. Hill and Norris had testified at length concerning the explanation for the alleged disparity, it is apparent that the court was still puzzled over the impact of exhibit 26 and felt a need for greater specificity with regard to each employee and each position. We do not denote in the request any untoward predisposition other than that which might naturally be expected in a judge who, as a trier of facts, was in the process of sifting the evidence and trying to reach a final and fair decision. Whether the judge's feelings at the moment were accurately conveyed to the parties by the letter and phone call from the court clerk, we do not presume to know. We assume they were. A more designing judge might as easily have obscured his thoughts, and thereby have avoided the charge. It is the essence of candor that it is often unartful. The trial judge spoke not in terms of legal nicety, but directly. We refuse to penalize him for it.

Plaintiff's reliance upon *Walz v. Fidelity-Phoenix Fire Insurance Co.*, 10 F.2d 22 (6th Cir. 1926), *cert. denied*, 271 U.S. 665, 46 S.Ct. 481, 70 L.Ed. 1140, and *Arthur Murray, Inc. v. Oliver*, 364 F.2d 28 (8th Cir. 1966) is in our judgment misplaced. In *Walz*, our court held that it was an abuse of discretion for the judge to reopen proofs for additional testimony after it became apparent that the jury was deadlocked. The judge's action in *Walz* amounted to an intrusion into the fact finding process which was entrusted to the jury; here in reopening the proofs, the trial judge was performing his own function as the trier of fact, not intruding into the business of others.

*Arthur Murray, Inc. v. Oliver, supra,* rests upon unusual facts which are not present here. In that case, the trial judge had appointed a special master in an antitrust case a year and a half after the case had been submitted to him on the merits for decision. Basing its decision in part

upon the requirement of Rule 53(b) that reference to a master "be the exception and not the rule", the Eighth Circuit reversed the lower court, holding that it was improper for the court to have authorized the master to "engage in a prospecting quest for other evidence". The court was quite careful, however, to limit its holding:

> A court has, of course, the general power to reopen a case, either on motion of a party or on its own motion, while the matter is still under advisement, for the receipt of further evidence . . . And only rarely perhaps where this has been done and the question comes up by way of appeal from the final judgment is the discretion so exercised likely to be held to have constituted an abuse.

The court recognized:

> [I]t is not given to a judge to engage in a prospecting quest for other evidence possibility to add to a record, nor counterpartly to appoint a master to make such a discovery pursuit for him. Thus, such evidence as a judge may properly seek to have added to a record on his own motion should appear both to be important as a matter of preventing injustice and to be reasonably available.
>
> *Arthur Murray, Inc. v. Oliver, supra,* at 34

If the foregoing are the standards for the exercise of discretion in reopening proof *sua sponte,* those standards are met in the instant case. The information sought here was readily available, and the judge conceived that the justice of the case required that he have it.[3]

We, therefore, conclude that the district judge as the trier of fact did not abuse his broad discretion in reopening the proofs. *Ramsey v. UMW,* 481 F.2d 742 (6th Cir. 1973); *Sandusky Foundry & Machine Co. v. Wickliffe,* 483 F.2d 695 (6th Cir. 1973); *U. S. v. 1,078.27 Acres of Land,* 446 F.2d 1030

(5th Cir. 1971), *cert. denied,* 405 U.S. 936, 92 S.Ct. 945, 30 L.Ed.2d 811; *Brody v. Aetna Casualty & Surety Co.,* 438 F.2d 1148 (5th Cir. 1971), *cert. denied,* 404 U.S. 940, 92 S.Ct. 273, 30 L.Ed.2d 253; *Nanda v. Ford Motor Co.,* 509 F.2d 213 (7th Cir. 1974).

■ Finally, appellant claims that the trial judge's findings that she was not the object of sex discrimination are clearly erroneous. Plaintiff does not claim that the trial court applied inappropriate legal standards. *See, Orr v. MacNeil & Son, Inc.,* 511 F.2d 166 (5th Cir. 1975), *cert. denied,* 423 U.S. 865, 96 S.Ct. 125, 49 L.Ed.2d 94. Rather the plaintiff argues that inferences from the evidence support her cause. Unlike *EEOC v. New York Times Broadcasting Co.,* 542 F.2d 356 (6th Cir. 1976), the undisputed evidence here does not lead unerringly to but one conclusion. Instead we view the evidence as presenting a dispute which was within the domain of the trier of fact to resolve.

> Thus, however, we might individually view the evidence if we were the triers of fact, it is clear that we are required to give great weight to the findings of the trial court which had the opportunity to see the witnesses, to weigh their evidence as it was presented, to view the demeanor of the persons who testified in court, and to determine all issues of credibility.
>
> *Ramsey v. UMW, supra,* 481 F.2d at 747

We conclude that the findings of the district judge are not clearly erroneous.

Affirmed.

---

**3.** At the commencement of the reopened hearing, the trial judge observed:

> Well, now the purpose of this so you will understand, is to try to get to the justice of this case, and we are not dealing in technicalities. The Court was not satisfied with the record as made up and for that reason it is trying to find out the truth in this case so that you won't be concerned about these technicalities. After all, we are only interested in the justice of this case, not in technicalities.