Joel **GERBER**, on his own behalf and on behalf of all others similarly situated, Plaintiff,

v.

**COMPUTER ASSOCIATES INTERNATIONAL., INC., LWB Merge, Inc., Charles B. Wang, Anthony Wang, Sanjay Kumar and Jack M. Berdy, Defendants.**

**No. 91 CV 3610 (SJ).**

United States District Court, E.D. New York.

Jan. 21, 1993.

As Corrected Feb. 17, 1993.

See also 814 F.Supp. 6.

Jeffrey H. Squire, Kaufman Malchman Kaufman, Joshua N. Rubin, Abbey & Ellis, New York City, for plaintiff.

Michael A. McElroy, Shaffield, McElroy & Lupu, Garden City, NY, for Computer Associates, defendants.

Steven E. Greenbaum, Berlack, Israels & Liberman, New York City for defendant Jack M. Berdy.

## MEMORANDUM AND ORDER

JOHNSON, District Judge:

Plaintiff Joel Gerber, on his own behalf and on behalf of all others similarly situated, commenced this class action against Defendants Computer Associates International, Inc., LWB Merge, Inc., Charles B. Wang, Anthony Wang, Sanjay Kumar (collectively "Computer Associates") and Jack M. Berdy for violation of various securities regulations. Computer Associates moves pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss Counts I and II of the Complaint. Defendant Jack M. Berdy also moves to dismiss Counts I and II as against him for failure to state a claim. For the reasons set forth below, Computer Associates' motion is granted in part and denied in part. Defendant Jack Berdy's motion is granted.

## I. BACKGROUND

For the purpose of deciding this motion, the Court takes all the allegations contained in the Complaint to be true. On August 16, 1991, Defendant Computer Associates ("Computer Associates") and On–Line announced that Computer Associates had made an offer which had been agreed to by management of On–Line to purchase all outstanding shares of On–Line for $15.75 in cash. The offer was said to be conditioned on the approval of the Boards of Directors of both On–Line and Computer Associates. On or about August 21, 1991, defendant Jack Berdy ("Berdy") on behalf of himself and On–Line and defendant Anthony Wang ("Wang"), on behalf of Computer Associates and LWB, simultaneously executed two agreements—an Agreement and Plan of Merger ("Tender/Merger Agreement") and a Stock Purchase and Non–Competition Agreement ("Berdy Agreement"). The Tender Merger Agreement provided for Computer Associates to cause LWB to effect the tender offer for all outstanding shares of On–Line at $15.75 per share. The Berdy Agreement provided that Computer Associates will cause LWB to pay $15.75 per share to purchase Berdy's 1,607,266 shares of On–Line and to pay Berdy $5,000,000 and transfer three vehicles owned by On–Line in exchange for Berdy's agreement not to compete with On–Line or Computer Associates for five years. Plaintiffs allege that the Tender/Merger Agreement and the Berdy Agreement were integral parts of a single plan for the acquisition of On–Line by Computer Associates.

The terms of the tender offer were set forth in an "Offer to Purchase" dated August 22, 1991 and in a Form 1429, dated August 23, 1991. The Tender/Merger Agreement states that the tender offer is conditioned upon a minimum of 2,451,286 shares being validly tendered and not withdrawn and a series of other conditions.

Plaintiffs allege that the $5,000,000 payment to Berdy represents higher, additional consideration to be paid by Computer Associates to Berdy. As a full-time medical student, Berdy's studies will occupy him fully and preclude him from competing against Computer Associates and On–Line. Computer Associates obtained non-competition agreement from the other On–Line senior officials. With the exception of single two year non-competition agreements, all the other agreements were for one year and all at far lower rates than Computer Associates agreed to pay Berdy for his non-competition. Plaintiffs allege that a five year non-competition agreement is "absurd on its face" because the computer business develops and changes so rapidly that Berdy's knowledge of an On–Line's business and his competitive threat will be nullified over time.

## II. ANALYSIS

### A. Rule 12(b)(6) Standard

■ The Court will examine the Plaintiff's claims under Rule 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Festa v. Local 3 International Brotherhood of Electrical Workers*, 905

F.2d 35, 37 (2d Cir.1990). The court must accept the facts as alleged in the complaint as true. *Easton v. Sundram,* 947 F.2d 1011, 1014–15 (2d Cir.1991). A motion to dismiss must be denied "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (*citing Conley v. Gibson,* 355 U.S. 41, 45–6, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

### B. Computer Associates' Motion to Dismiss

#### 1. Claims under Section 14(d)(7) and SEC Rule 14d–10

Plaintiffs contend that the Berdy Agreement violated Section 14(d)(7) of the Securities and Exchange Act of 1934 and Securities and Exchange Commission ("SEC") Rule 14d–10 by giving Berdy $3.00 more per share than the other shareholders. Section 14(d)(7) provides:

> Where any person varies the terms of a tender offer or request or invitation for tenders before the expiration thereof by increasing the consideration offered to holders of such securities, such person shall pay the increased consideration to each security holder whose securities are taken up and paid for pursuant to the tender offer or request or invitation for tenders whether or not such securities have been taken up by such persons before the variation of the tender offer or request or invitation.

SEC Rule 14d–10 provides:

> (a) No bidder shall make a tender offer unless:
>
> .   .   .   .   .
>
> (2) The consideration paid to any security holder pursuant to the tender offer is the highest consideration paid to any other security holder during such tender offer.

The statute and rule prohibit a tender offeror from varying the terms of the tender offer after the commencement of the offer. The key inquiry is when the tender offer actually commenced. Computer Associates argues that Gerber has failed to state a claim under § 14(d)(7) and Rule 14d–10 because the tender offer did not commence as a matter of law and by its terms until the date after the Berdy agreement was executed. Computer Associates argues that this Court is bound by the Delaware Chancery Court's ruling that the tender offer began on August 22, 1991. If this Court determines that it is not bound by the Chancery Court's decision, then it must apply the totality of the circumstances test to determine the date of commencement. The Court will address each of these arguments in turn.

First, the Court finds Computer Associates' argument that the decision of the Delaware Chancery Court's decision is binding upon this Court to be without merit. Following the announcement of Computer Associates tender offer, Gerber commenced an action in the Delaware Chancery Court to enjoin the consummation of the tender offer. In denying Gerber's motion for injunctive relief, the Vice Chancellor stated that "Ca commenced the tender offer attacked by plaintiff on August 22, 1991." Computer Associates argues that this Court is now bound by that statement under the principle of res judicata.

The doctrine of res judicata bars relitigation of any claim between two parties where a court has previously entered a final judgment on the merits. *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Milltex Industries Corp. v. Jacquard Lace Co. Ltd.,* 922 F.2d 164 (2d Cir.1991). Findings made in a preliminary injunction proceeding lack preclusive effect because they are rarely final. *Don King Productions, Inc. v. Douglas,* 742 F.Supp. 741, 754 (S.D.N.Y.1990). The Vice Chancellor made preliminary findings and did not enter a final judgment in the Delaware action. Furthermore, the date of the commencement of the tender offer was never litigated. Therefore, the decision by the Delaware Court is not binding.

The Plaintiffs argue that under SEC

Rule 14d–2[1] Computer Associates' tender offer commenced on August 16, 1991. SEC Rule 14d–2 governs the date of commencement of a tender offer. It provides that a public announcement by a bidder through a press release, newspaper advertisement or public statement which includes the identity of the bidder, the identity of the subject company, and the amount and class of securities being sought and the price or range of prices being offered shall be deemed to constitute the commencement of a tender offer. If within five business days of the date of such public announcement, the bidder either makes a subsequent public announcement stating that the bidder has determined not to continue with such tender offer or contemporaneously disseminates the disclosure required by Rule 14d–6 to security holders pursuant to Rule 14d–4. This "safe harbor" provision allows bidders to make public announcements about prospective tender offers without actually commencing the tender offer.

These provisions are "intended to prevent public announcements by a bidder of the material terms of its tender offer in advance of the offer's formal commencement."[2] The Securities and Exchange Commission has determined that pre-commencement public announcements are "detrimental to the interest of investors" because they "cause security holders to make investment decisions with respect to a tender offer on the basis of incomplete information and trigger market activity normally attendant to a tender offer."[3] "Under Rule 14d–2(b) a bidder's public announcement through a press release, newspaper advertisement or public statement of certain material terms of a cash tender offer causes the bidder's tender offer to commence under Section 14(d) of the Exchange

**1.** (a) Commencement. A tender offer shall commence for the purposes of Section 14(d) of the Act and the rules promulgated thereunder at 12:01 a.m. on the date when the first of the following events occurs.

(b) Public Announcement. A public announcement by a bidder through a press release, newspaper advertisement or public statement which includes the information in paragraph (c) of this rule with respect to a tender offer in which the consideration consists solely of cash and/or securities exempt from registration under Section 3 of the securities Act of 1993 shall be deemed to constitute the commencement of a tender offer under paragraph (a)(5) of this rule except that such tender offer shall not be deemed to be first published or sent or given to security holders by the bidder under paragraph (a)(5) of this rule on the date of such public announcement, the bidder either:

(1) Makes a subsequent public announcement stating that the bidder has determined not to continue with such tender offer, in which event paragraph (a)(5) of this rule shall not apply to the initial public announcement; or

(2) Complies with Rule 14d–3(a) and contemporaneously disseminates the disclosure required by Rule 14d–6 to security holders pursuant to Rule 14d–4 or otherwise in which event:

(i) The date of commencement of such tender offer under paragraph (a) of this rule will be determined by the date of information required by Rule 14d–6 is first published or sent or given to security holders pursuant to Rule 14d–4 or otherwise; and

(ii) Notwithstanding paragraph (b)(2)(i) of this rule, Section 14(d)(7) of the Act shall be deemed to apply to such tender offer from the date of such public announcement.

(c) Information. The information referred to in paragraph (b) of this rule is as follows:

(1) The identity of the bidder;

(2) The identity of the subject company; and

(3) The amount and class of securities being sought and the price or range of prices being offered therefor.

(d) Announcements Not Resulting in Commencement. A public announcement by a bidder through a press release, newspaper advertisement or public statement which only discloses the information in paragraphs (d)(1) through (d)(3) of this rule concerning a tender offer in which the consideration consists solely of cash and/or securities exempt from registration under Section 3 of the Securities Act of 1933 shall not be deemed to constitute the commencement of a tender offer under paragraph (a)(5) of this rule.

(1) The identity of the bidder;

(2) The identity of the subject company; and

(3) A statement that the bidder intends to make a tender offer in the future for a class of equity securities of the subject company which statement does not specify the amount of securities of such class to be sought or the consideration to be offered therefor.

**2.** Adoption of Amendments to Regulation 14D, Exchange Act Release No. 16,384 [1979–1980 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 82,373, 82,582 (Nov. 20, 1979).

**3.** *Id.* at 82,582–3.

Act." [4]  The press release issued by Computer Associates and On–Line on August 16, 1991 contained all the material terms necessary to trigger a tender offer. It identified the bidder as Computer Associates, the subject company as On–Line and the amount, class and price of securities being sought as all of the outstanding common stock of On–Line for $15-¾ per share. Therefore, Computer Associates' tender offer commenced on August 16, 1991.

The Defendants argue that the Court should apply the "totality of the circumstances" test of *Hanson Trust PLC v. SCM Corp.*, 774 F.2d 47 (1985) and the "Eight Factor Test" of *Wellman v. Dickinson*, 475 F.Supp. 783 (S.D.N.Y.1979), *aff'd*, 682 F.2d 355 (2d Cir.1982), *cert. denied*, 460 U.S. 1069, 103 S.Ct. 1522, 75 L.Ed.2d 946 (1983) to determine the date Computer Associates' tender offer commenced. However, these cases are distinguishable. The issue in *Hanson* and *Wellman* was whether the company's conduct amounted to a tender offer. Here, no one disputes that a tender offer occurred. The only question is the date it began. In cases such as this, courts should strictly construe Rule 14d–2 to determine when a tender offer commenced.

### 2. Claims Under SEC Rule 10b–13

■ In Count II of the Complaint, the Plaintiffs allege that the Berdy Agreement, dated August 21, 1991, violated SEC Rule 10b–13. SEC Rule 10b–13 provides in relevant part:

No person who makes a cash tender offer or exchange offer for any equity security shall, directly or indirectly, purchase, or make any arrangement to purchase, any security (or any other security which is immediately convertible into or exchangeable for such security), or otherwise than pursuant to such tender offer or exchange offer, from the time such tender offer or exchange offer is publicly announced or otherwise made known by such person to holders of the security until the expiration of the period....

The purpose of this rule is to prevent tender offerors from engaging in discriminatory pricing among the shareholders.

■ Defendants argue that Count II fails to state a claim because there is no private right of action under Rule 10b–13. In *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court articulated the test for determining whether a private remedy is implicit in a statute not expressly providing one.

First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted,' ... that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? ... Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? ... And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?"

422 U.S. at 78, 95 S.Ct. at 2088.

Plaintiffs clearly meet the first prong of the test. The Securities and Exchange Commission adopted Rule 10b–13 expressly "for the protection of investors," with "the objective of safeguarding the interests of the persons who have tendered their securities in response to a cash tender offer or exchange offer." [5] The class represented by Gerber are all shareholders who tendered their shares in On–Line in response to Computer Associates' tender offer and therefore are the class for whose benefit the statute was enacted.

■ The second prong of the test demands that the Court inquire whether there is any legislative or administrative intent to create a private right of action. While there is nothing in the language of Rule 10b–13 which creates a private right

---

**4.** *Id.* at 82,583.

**5.** Adoption of Rule 10b–13 under the Act, Securities and Exchange Act Release No. 8712 (Oct. 8, 1969).

of action, there is nothing to suggest that the SEC did not intend to create a private right of action. However, where the chief purpose behind Rule 10b–13 is protecting investors, the availability of judicial relief to achieve that goal is implicit. *See J.I. Case Co. v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964) (holding that private parties have an implied right to bring suit for violation of Section 14(a) of the Securities and Exchange Act).

The third factor is whether it is consistent with the underlying purposes of the legislative scheme to imply a private cause of action for the plaintiff. "It has been held that a private right of action should be implied to a statute not otherwise providing for one only when implication would serve to promote the primary purpose of the legislation." *Siedman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 465 F.Supp. 1233, 1237 (S.D.N.Y.1979) (*citing Piper v. Chris–Craft Industries, Inc.*, 430 U.S. 1, 25, 97 S.Ct. 926, 941, 51 L.Ed.2d 124 (1977)). Section 10(b) is a 'catch-all' anti-fraud statute. *Chiarella v. United States*, 445 U.S. 222, 234–5, 100 S.Ct. 1108, 1117–8, 63 L.Ed.2d 348 (1980). Unlike Rule 10b–5, Rule 10b–13 is not designed to prevent fraud. It provides a standard of conduct to be followed by tender offerers. *See Siedman v. Merrill Lynch, Pierce, Fenner & Smith Inc., supra* at 1237. Therefore, implying a private right of action under Rule 10b–13 would not further the anti-fraud goal of Section 10(b) and Count II should be dismissed.[6]

### C. Berdy's Motion to Dismiss the Complaint

■ Berdy asserts that he cannot be held liable on Counts I and II of the Complaint as either a principal or an aider and abettor because Section 14(d)(7), Rule 14d–10 and Rule 10b–13 are inapplicable to shareholders like himself. On their face, these three provisions regulate the conduct of tender offerors and bidders. *Kramer v. Time Warner, Inc.*, [1990–91 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 95,619 at 97,902, 1990 WL 166665 (S.D.N.Y.1990). Section 14(d)(7) states that "where any person varies the terms of a tender offer ... such person shall pay increased consideration to each security holder." Rule 14d–10 similarly provides that "no bidder shall make a tender offer unless" the consideration paid to any security holder is the highest consideration paid to any other security holder. SEC Rule 10b–13 provides that "[n]o person who makes a cash tender offer or exchange offer for any equity security shall, directly or indirectly, purchase ... any such security ... from the time such tender offer or exchange offer is publicly announced." Plaintiff has cited no cases holding these provisions applicable to tendering shareholders. Therefore, the Court must conclude that shareholders cannot be held principally liable under Section 14(d)(7), Rule 14d–10, and Rule 10b–13.

■ Plaintiffs do contend however that persons other than tender offerors may be held liable as an aider and abettor under these provisions. In support of this proposition, Plaintiffs cite *Wellman v. Dickinson*, 475 F.Supp. 783 (S.D.N.Y.1979), *aff'd*, 682 F.2d 355 (2d Cir.1982), *cert. denied*, 460 U.S. 1069, 103 S.Ct. 1522, 75 L.Ed.2d 946 (1983) and *Field v. Trump*, 850 F.2d 938 (2d Cir.1988). None of the cases cited hold tendering shareholders like Berdy liable as an aider and abettor. In *Field v. Trump*, there is no discussion of the type of liability sought to be imposed upon the target company, the target's officers and directors in connection with plaintiff's Section 14(d)(7) and Rule 14d–10 claims. While the court in *Wellman v. Dickinson* holds non-bidders liable as aiders and abettors under Section 14(d), it does not extend that liability to tendering shareholders. The Plaintiff has cited none and the Court has found no case in which the court imposed aider and abettor liability upon a shareholder under these provisions. Based on the foregoing, the

---

**6.** The Second Circuit has repeatedly expressed doubt about the availability of a private right of action under Rule 10b–13. *See e.g. Field v. Trump*, 850 F.2d 938, 946 n. 3 (2d Cir.1988); *Beaumont v. American Can Company*, 797 F.2d 79, 84 (2d Cir.1986); *Kramer v. Time Warner, Inc.*, [1990–91 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 95,619 at 97,902 n. 7, 1990 WL 166665 (S.D.N.Y.1990).

368

Court refuses to extend aider and abettor liability to Berdy.

## III. CONCLUSION

For the reasons stated above, Computer Associates' motion to dismiss Counts I of the Complaint is hereby denied and granted as to Count II. Berdy's motion to dismiss Counts I and II as against him is hereby granted.

So Ordered.