## STUDENTS OF CALIFORNIA SCHOOL FOR THE BLIND, et al., Plaintiffs-Appellees,

v.

**Bill HONIG, in his capacity as Superintendent of Public Instruction of the State of California, et al., Defendants-Appellants.**

No. 84–1506.

United States Court of Appeals, Ninth Circuit.

Oct. 18, 1984.

Dennis Eckhart, Deputy Atty. Gen., Sacramento, Cal., for defendants-appellants.

Armando M. Menocal, III, Public Advocates, Inc., San Francisco, Cal., for plaintiffs-appellees.

SNEED, Circuit Judge, with whom Circuit Judges GOODWIN, WALLACE, KENNEDY, POOLE, and BEEZER join, dissenting from failure to take en banc:

I dissent from the failure of this court to consider en banc the correctness of those portions of this court's panel decision in *Students of Calif. School for the Blind v. Honig*, 736 F.2d 538 (9th Cir.1984), that construed the Education for All Handicapped Children Act of 1975 (EAHCA), 20 U.S.C. §§ 1232, 1400–1401, 1405–1406, 1411–1420, 1453 (1982). The panel's construction, in my opinion, is erroneous and clearly unnecessary to the result the panel reached. It also reflects an insensitivity to the most recent relevant Supreme Court pronouncements and to the principles of federalism those pronouncements sought to explicate. Finally, it disregards the limits on "creative interpretation" that a keener appreciation of the doctrine of separation of powers would have imposed.

## I.

In *Students*, a group of handicapped students challenged the California Department of Education's (the Department) proposed move of its residential school for the blind from Berkeley to Fremont on the basis that the Department had failed to test the Fremont facility adequately for seismic safety, as required by Cal.Educ.Code §§ 39002–39002.5 (West 1978 & Supp.1984). The students brought suit in federal court alleging that the Department's failure violated both EAHCA and section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1982). The district court found that the Department's seismic investigation was inadequate. Consequently, the court preliminarily enjoined the Department to conduct ad-

ditional tests or close the Fremont facility. The *Students* panel affirmed, and a request was made by a circuit judge to take the case en banc.

The panel concluded that the Supreme Court's recent pronouncement in *Pennhurst State School & Hosp. v. Halderman (Pennhurst II)*, —— U.S. ——, 104 S.Ct. 900, 911, 79 L.Ed.2d 67 (1984), that the Eleventh Amendment [1] bars injunctions ordering state officials to obey state law, presented no obstacle to the preliminary injunction issued by the district court. *Students*, 736 F.2d at 543–44. The court distinguished *Pennhurst II* by asserting that the instant action was not a case where a district court had ordered state defendants to conform their conduct to state law; rather, the district court had ordered the Department to abide by two federal statutes which incorporate state law standards. 736 F.2d at 543. These two statutes were EAHCA and section 504 of the Rehabilitation Act of 1973.[2] It concluded that the students' claims were cognizable under *both* statutes. *Id.* at 544–47.

## II.

I have no quarrel with the court's interpretation of section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (1982), which prohibits discrimination on the basis of an individual's handicap "under any program or activity receiving Federal financial assistance." [3] Assuming that the Fremont facility does not meet California's seismic safety standards and is inferior to other public school buildings, the *Students* panel correctly concluded that the students had raised a serious question as to the availability of relief under section 504. *See* 736 F.2d at 546–47.

Thus, I do not write because I object to the result the *Students* panel reached. I write solely because the panel's EAHCA analysis was unnecessary and erroneous. In a large circuit such as this, such panel outreach tends to loosen the normal bonds of judicial restraint and to encourage an unseemly form of rushing to the clerk's office with holdings quite beyond the requirements of the case.

## III.

The panel's outreach springs from its interpretation of EAHCA's condition of funding, 20 U.S.C. § 1412(1), which requires states to "ha[ve] in effect a policy that assures all handicapped children the right to a free appropriate public education." To be a "free appropriate public education," section 1401(18)(B) of EAHCA requires that such education "meet the standards of the State educational agency." [4] The panel used this to impose a

---

**1.** Although by its terms, the Eleventh Amendment does not literally apply to suits brought against a state by its own citizens, the Court's opinion in *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), "established that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Employees v. Department of Pub. Health & Welfare*, 411 U.S. 279, 280, 93 S.Ct. 1614, 1615, 36 L.Ed.2d 251 (1973).

**2.** The *Students* panel observed, *see* 736 F.2d at 543–44, that a state waives its Eleventh Amendment immunity under EAHCA by participating in a federal program to educate handicapped children. *See Department of Educ., State of Hawaii v. Katherine D.*, 727 F.2d 809, 818–19 (9th Cir.1983). (With regard to *Katherine D.*, a petition for rehearing and a suggestion for rehearing en banc are pending. These do not involve issues that are relevant to the present case. *Students*, 736 F.2d at 543 n. 2.)

As to section 504 of the Rehabilitation Act, the *Students* court acknowledged the holding in *Scanlon v. Atascadero State Hosp.*, 735 F.2d 359 (9th Cir.1984), that the Eleventh Amendment presents no bar to actions brought pursuant to section 504. *See* 736 F.2d at 544.

**3.** Section 504 provides, in relevant part:
No otherwise qualified handicapped individual in the United States ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ....
29 U.S.C. § 794 (1982). The *Students* court's analysis of section 504 is cogent and well taken, *see* 736 F.2d at 546–47; there is no need to duplicate it in its entirety here.

**4.** The statutory definition, 20 U.S.C. § 1401(18), provides:
The term "free appropriate public education" means special education and related ser-

federal duty to conform to California's seismic safety provisions. *See* 736 F.2d at 544–46. This, in effect, extends to handicapped children a federal cause of action to redress a violation of *any* state requirement concerning education, even requirements that benefit all children generally. This is a right nonhandicapped children do not have.

My point can be made by way of example. Had the handicapped children in this case attended a public school, together with nonhandicapped students, built in violation of California's seismic safety standards, the handicapped children, under the panel's view, would enjoy a federal cause of action while their nonhandicapped companions would not,[5] even though the risk resulting from the violation threatens all students equally.[6] I do not believe Congress intended to federalize all state law pertaining to education for the benefit of handicapped students. No legislative history supports this result. Congress passed EAHCA to ameliorate the unique problems faced by handicapped students. The scope of EAHCA should be interpreted to achieve this end only.

First, section 1401(18) stresses that " 'free appropriate public education' means *special* education and related services which ... meet the standards of the State educational agency ...." 20 U.S.C. § 1401(18) (emphasis added). Section 1401(16) further defines "special education" as "specially designed instruction ... to meet the unique needs of a handicapped child...." Finally, 20 U.S.C. § 1401(17)

defines "related services" to include "such developmental, corrective, and other supportive services ... as may be required to assist a handicapped child to benefit from special education...."

This emphasis on "special education" and "unique needs" belies the notion that EAHCA creates a federal cause of action with respect to all state requirements pertaining to education, including states' general education requirements. Rather, EAHCA imposes a structure on the states that requires individual consideration of each handicapped child's particular needs and provides a federal cause of action to redress the failure of state agencies to put in place standards designed to meet those special needs. *See* 20 U.S.C. § 1415(a) ("Any State educational agency ... which receives assistance under this subchapter shall establish and maintain procedures ... to assure that handicapped children and their parents or guardians are guaranteed procedural safeguards with respect to the provision of free appropriate public education ...."); *id.* § 1415(e) (an aggrieved party "shall have the right to bring a civil action ... in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy.... [T]he court ... shall grant such relief as [it] deems appropriate.").

Second, as already mentioned, legislative history offers no support for the panel's interpretation. Acting on a finding that "there are more than eight million handicapped children in the United States today

---

5. As it does not fall under EAHCA, the Supreme Court's holding in *Pennhurst II,* —— U.S. ——, 104 S.Ct. 900, 911, 79 L.Ed.2d 67 (1984), would bar the nonhandicapped students' cause of action insofar as it would be premised on state law.

vices which (A) have been provided at public expense, under public supervision and direction, and *without charge,* (B) *meet the* standards of the State educational agency, (C) include an appropriate preschool, elementary, or secondary school education in the State involved, and (D) are provided in conformity with the individualized education program required under section 1414(a)(5) of this title.

6. Of course, an earthquake presents more of a threat to a blind child than it does to a child with unimpaired vision. But it is possible to conceive of a handicap—such as a learning defect—that is not especially dangerous in the event of an earthquake or a violation of state provisions relating to education—such as unacceptably impure drinking water—that does not bear unduly on the handicapped. In any event, the *Students* court's reading does not allow these distinctions and provides a federal cause of action for violation of any state requirement pertaining to education, without regard to the surrounding circumstances.

[whose] special educational needs ... are not being fully met," 20 U.S.C. § 1400(b)(1)–(2) (congressional statements and declarations), Congress passed EAHCA "to assure that all handicapped children have available to them ... a free appropriate public education *which emphasizes special education and related services designed to meet their unique needs,*" *id.* § 1400(c) (emphasis added). Accordingly, Congress required that states "remain[ ] responsible for providing an appropriate education designed to meet the specific needs of the handicapped child at no cost to that child's parent." S.Rep. No. 168, 94th Cong., 1st Sess. 10 (1975) (discussion of the definition of "free appropriate public education"), *reprinted in* 1975 U.S.Code Cong. & Ad.News 1425, 1434. Based on the recognition that such a mandate entails enhanced costs, *see* H.R.Rep. No. 332, 94th Cong., 1st Sess. 11–12 (1975), stemming from factors such as the need to train teachers and engage additional support personnel to handle the problems presented by educating handicapped children, *see* S.Rep. No. 168, 94th Cong., 1st Sess. 33–34 (1975), *reprinted in* 1975 U.S.Code Cong. & Ad.News 1456–58, EAHCA provides funding to defray the burden placed on the states. But the EAHCA focus is on the *additional* cost occasioned by educating the handicapped: "[M]onies must be directed toward ... 'excess cost' factors.... A local school district must determine its average annual per pupil expenditure for all children being served, and then apply the federal dollars only to those additional cost factors for handicapped children beyond the average annual per pupil expenditure." H.R.Rep. No. 332, 94th Cong., 1st Sess. 13 (1975); *see* 20 U.S.C. § 1414(a)(2)(B). Congress plainly did not intend EAHCA to subsidize state and local funds ordinarily available for general public education. *Id.* Nor did it intend the subsidy available to the handicapped to be diminished to secure the performance by the state of its responsibilities to general education. Yet this is what the *Students* panel may have accomplished. Litigation, such as this case represents, which results in ordering a state to

abide by its general education requirements effectively reduces the total resources available to both the handicapped and the nonhandicapped. Only an increase in state support of general education or an increase in the federal subsidy would avoid this reduction. The first will always be problematic, even if required by federal law, while the second would involve the use of the needed increment to promote performance by the state of its general educational responsibilities. I do not think Congress sought to have its subsidy serve this purpose or be imperiled by possible diversion to public education in general.

Finally, the Ninth Circuit cases marshalled by the *Students* panel do not support its result. Although the panel cited *Mountain View-Los Altos Union High School Dist. v. Sharron B.H.,* 709 F.2d 28 (9th Cir.1983), for the proposition that physical safety is part of a free appropriate public education, that case in fact reserved its judgment on the question of safety. *Id.* at 30. Finding that a parent could not unilaterally transfer her child to a private school before the EAHCA administrative process had run its course and then seek reimbursement from the state, the court "le[ft] open the possibility of reimbursement where a parent's unilateral transfer is justified by a grave and immediate threat to the child's physical health...." *Id.* That situation was not before it. *Id.*

This court did face a claim that a proposed placement threatened a handicapped child's health in *Department of Educ., State of Hawaii v. Katherine D.,* 727 F.2d 809 (9th Cir.1983). The plaintiff in that case suffered from cystic fibrosis and tracheomalacia, ailments which required her to wear a tracheostomy tube. *Id.* at 812. She claimed that a proposal to place her at a normal public school, where the state would train the school's staff to attend to her daily medical needs and to provide emergency medical services should her tube become dislodged, did not offer her a free appropriate public education. *Id.* at 812, 814–15. This was because she perceived that the staff was reluctant to per-

form the necessary services. This court rejected her contention, finding that there was insufficient evidence to indicate that the school staff would not perform the services.[7] *Id.* at 815.

The most important element of *Katherine D.* for purposes of the present case is the nature of the health threat alleged. The alleged threat to the plaintiff's health stemmed exclusively from the school's proposed method of dealing with her handicap. It was the school's alleged reluctance to provide the necessary and unique services to accommodate the plaintiff's ailment that threatened her health and safety. She was not faced by a violation that threatened all children equally. Therefore, *Katherine D.* provides no support for the result reached by the *Students* panel.

In sum, neither the statute, the legislative history, nor the relevant case law supports the *Students* panel's broad reading of EAHCA.

### IV.

The *Students* panel's construction of EAHCA also displays a lack of sensitivity to the principle of federalism that animates the Supreme Court decisions which touch on immunity of states from suits in federal court under the Eleventh Amendment and on Congress' power to impose obligations on states through the use of its spending power. *See Pennhurst II,* —— U.S. ——, 104 S.Ct. 900, 911, 79 L.Ed.2d 67 (1984); *Board of Educ. v. Rowley,* 458 U.S. 176, 204 n. 26, 102 S.Ct. 3034, 3049–50 n. 26, 73 L.Ed.2d 690 (1982); *Pennhurst State School & Hosp. v. Halderman (Pennhurst I),* 451 U.S. 1, 17, 101 S.Ct. 1531, 1539, 67 L.Ed.2d 694 (1981). Furthermore, the panel disregarded the limits on statutory interpretation which I believe are implied by the doctrine of separation of powers.

While the Eleventh Amendment does not preclude actions seeking prospective relief against state officials predicated on violations of federal law, *Edelman v. Jordan,* 415 U.S. 651, 663–71, 94 S.Ct. 1347, 1355–60, 39 L.Ed.2d 662 (1974); *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Supreme Court decided in *Pennhurst II* that it stands as an absolute bar to actions in federal court alleging that state officials have violated state law, *see* 104 S.Ct. at 910–11. In reaching this result, the Court emphasized that its "reluctance to infer that a State's immunity from suit in the federal courts has been negated stems from recognition of the vital role of the doctrine of sovereign immunity in our federal system." *Id.* at 907. Promotion of federal supremacy is not served by entertaining in federal courts actions by persons against states based on state law. *Id.* at 911. State courts are available for that purpose. To do otherwise impairs the states' constitutional immunity. And as the Court in *Pennhurst II* observed, "[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Id.*

Also in *Pennhurst I,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981), the Supreme Court urged hesitancy in construing statutes imposing obligations on the states enacted by Congress using its spending power:

> The legitimacy of Congress' power to legislate under the spending power ... rests on whether the State voluntarily and knowingly accepts the terms of the "contract." ... There can, of course, be no knowing acceptance if a State is unaware of the conditions or is unable to ascertain what is expected of it. Accordingly, if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously.

*Id.* at 17, 101 S.Ct. at 1540 (citations and footnote omitted). The Court later quoted

---

7. The plaintiff's claim was based on two pieces of evidence: an overheard conversation between two unidentified teachers expressing reservations about administering the necessary services and a grievance petition filed by unions representing school employees seeking to clarify whether their contracts required union members to perform the services. 727 F.2d at 815.

this language with approval in *Board of Educ. v. Rowley*, 458 U.S. 176, 204 n. 26, 102 S.Ct. 3034, 3049–50 n. 26, 73 L.Ed.2d 690 (1982), a case that construed EAHCA.

The *Students* panel brushed aside these considerations. It distinguished *Pennhurst II* by asserting that "[t]he district court did not order the state defendants to conform their conduct to state law, but to abide by federal statutes which incorporate certain aspects of state law," 736 F.2d at 543 (footnote omitted), and then it moved on to construe EAHCA.[8] In doing so, however, the panel failed to recognize that the state sovereignty concerns raised by *Pennhurst II* necessarily color the statutory interpretation question as well. The panel similarly disposed of the concerns regarding Congress' spending powers raised by the Supreme Court in *Pennhurst I* and *Rowley*: It observed—with tautological certainty—that "California knew when it accepted federal monies for programs funded under EAHCA that it would have to meet the standards established by its educational agency, and that those standards encompassed seismic safety of school sites." 736 F.2d at 545.

The instant case presents concerns rooted in a fidelity to our federal system similar to those raised by the Supreme Court in *Pennhurst II*. Although here it is Congress, and not the federal courts, that purports to require state officials "to conform their conduct to state law," we nevertheless should be wary of recognizing federal rights premised on the incorporation of state law into federal law when Congress has spoken most indistinctly. In such a situation, Congress and not this court should delineate where federal jurisdiction begins and where it ends. When Congress fails to do so with the requisite precision, a sound appreciation of the principle of separation of powers suggests that the federal courts should stay their hand until the Congressional voice is clear and distinct. At present it is not.

Therefore I must respectfully dissent from this court's failure to rehear the case en banc.

---

8. The *Students* court did consider whether the Department had waived its Eleventh Amendment protection. *See* 736 F.2d at 543–44. But this analysis of the waiver issue may have been misplaced. The present case is not like *Department of Educ., State of Hawaii v. Katherine D.*, 727 F.2d 809 (9th Cir.1983). There, the plaintiff sued for *reimbursement* of tuition paid to a private school. Because such reimbursement constitutes "a retroactive award of monetary relief" barred by the doctrine of *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the question of waiver was properly presented. Here, by contrast, the district court awarded an injunction which operates *prospectively*. *See id.* at 668, 94 S.Ct. at 1358 ("State officials, in order to shape their official conduct to the mandate of the Court's decrees, would

more likely have to spend money from the state treasury than if they had been left free to pursue their previous course of conduct. Such an ancillary effect on the state treasury is a permissible and often an inevitable consequence of the principle announced in *Ex parte Young*. . . ."). Thus, the sole question presented is whether EAHCA incorporates California seismic safety standards. If it does, *Edelman v. Jordan* and *Ex parte Young* dictate that the Eleventh Amendment presents no bar to the award of prospective relief. But if it does not, the *Pennhurst II* holding that the Eleventh Amendment also forbids prospective relief where suits allege violations of state law comes into play. Whether California or the Department has waived its immunity is therefore not at issue.