97 F.3d 1459
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Brad DENHAM, Plaintiff-Appellant,
v.
STATE of Arizona, Defendant,
and
Ruben Acosta, M.D.; Theodore B. Jolley; Barbara Tucker;
Robert White, Dr.; Theodore Smith, Dr.;
Catsaros, Dr.; Ray Rickleman; Maria
Nugent; Barbara Major;
Thomas Lutz,
Defendants-Appellees.
 No. 95-16962.
 United States Court of Appeals, Ninth Circuit.
 Submitted Sept. 23, 1996.*
Decided Sept. 26, 1996.
 
 Before: FLETCHER, BRUNETTI, and JOHN T. NOONAN, Jr., Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Bradley Denham, an Arizona state prisoner, appeals pro se the district court's summary judgment for physician Ruben Acosta and various state prison officials in his 42 U.S.C. § 1983 action alleging that defendants were deliberately indifferent to his serious medical needs in treating him for diverticulitis. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm in part, vacate in part, and remand.
 
 
 3
 We review de novo a district court's grant of summary judgment. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1992). To establish a violation of the Eighth Amendment, Denham must show that defendants were deliberately indifferent to his serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 104 (1976); McGuckin, 974 F.2d at 1059. The indifference to medical needs must be substantial; inadequate treatment due to malpractice does not amount to a constitutional violation. Estelle, 429 U.S. at 106; McGuckin, 974 F.2d at 1059. Denham must also show that prison officials had a "sufficiently culpable state of mind." Farmer v. Brennan, 114 S.Ct. 1970, 1977 (1994) (internal quotations and citations omitted).
 
 
 4
 Denham claimed that Acosta, a contract physician for the Arizona Department of Corrections ("ADOC"), exhibited deliberate indifference to his serious medical needs by failing to ensure that surgery to close his two colostomies was not delayed, cutting his small intestine during surgery, and failing to rectify the perforation in a timely manner. We affirm the district court's summary judgment for Acosta for the reasons set forth in its opinion filed on March 3, 1995.[1]
 
 
 5
 Denham also contends that the district court erred by granting summary judgment for prison officials because Denham presented evidence that defendants were deliberately indifferent to his serious medical needs following his second colostomy. This contention has merit.
 
 
 6
 Denham stated in his affidavit that following his second colostomy, prison officials transferred him to a "protective custody solitary cell" in the Rincon housing unit, in retaliation for filing the instant lawsuit. Denham complained that the cell and mattress were filthy and covered with cigarette butts and ashes, and that during his two-week stay in the Rincon unit, his
 
 
 7
 bandage was changed only once. [His] incision regularly leaked all over [him] and the bed. [He] was not allowed to shower nor given anything to clean [him]self with. Once a day a nurse would open the door and check to see if [he] was still alive. [He] had to remain in the cell 24 hours a day ... [and he] firmly believed that they put [him] there to kill [him].[2]
 
 
 8
 Denham also stated that he informed prison officials of the inadequate treatment and unsanitary conditions at the Rincon unit. Prison officials failed to submit any evidence regarding the conditions at the Rincon unit.
 
 
 9
 Viewing the record in the light most favorable to Denham, the evidence is sufficient to present a triable issue of fact regarding whether prison officials were deliberately indifferent to Denham's medical needs. See McGuckin, 974 F.2d at 1059. Specifically, Denham provided evidence from which an inference might be drawn that prison officials were subjectively aware of the serious risks to Denham's health caused by placement in the Rincon unit, and that they failed to take reasonable measures to abate the risks. Accordingly, the district court erred by granting summary judgment for prison officials. See Farmer, 114 S.Ct. at 1977; McGuckin, 974 F.2d at 1059. To the extent that Denham has raised a retaliation claim, the district court should consider that claim on remand. See Rizzo v. Dawson, 778 F.2d 527, 531-32 (9th Cir.1985).
 
 
 10
 Denham's remaining contentions lack merit. First, Denham claimed that the two or three month delay in surgery to close his first colostomy prolonged his pain, discomfort, and humiliation, by forcing him to wear a colostomy bag longer than required. Denham also claimed that the delay in surgery was caused by budget constraints, and that prison administrators should have allocated emergency funds for the operation. Treating physician White stated in his affidavit that Denham's surgery for closure was timely given Denham's lengthy history of health problems and the complications of the initial surgery. Expert witness Dr. Bores supported White's conclusions, and stated that closure of a colostomy is not a medically required procedure. This difference of opinion between the patient and prison medical authorities does not constitute deliberate indifference. See Franklin v. State of Oregon, State Welfare Div., 662 F.2d 1337, 1344 (9th Cir.1981).
 
 
 11
 Second, Denham claimed that the delay in closing his second colostomy caused him pain, anxiety, and humiliation, and that the stress of wearing the colostomy bag caused his heart attack. Dr. Acosta recommended that Denham obtain a barium enema in October, 1991, to determine whether closure of the colostomy was appropriate. Denham spoke to prison administrator Jolley about the enema in October, 1991. Dr. White requested the enema in December, 1991, but before it was performed, Denham suffered a heart attack. Dr. White stated that
 
 
 12
 Doctor Acosta's recommendation [to schedule the barium enema] merely specified the minimal amount of time to wait to allow for healing before it would be safe to respect the colostomy. In fact, any further time interval would provide additional time for healing and would not be detrimental to the patient's health or medical condition.
 
 
 13
 The evidence shows that an operation to close a colostomy, and by extension, the procedure to determine the appropriateness of closure, are not medically urgent procedures. Because Denham has not shown a delay in urgent or medically-required treatment, he has failed to show that defendants were deliberately indifferent to his serious medical needs by delaying his enema. See Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir.1990) (noting that delay in treating a non-emergency condition did not amount to deliberate indifference). Moreover, the uncontroverted evidence shows that the delay in closure of the colostomy following Denham's heart attack was medically advisable given Denham's extensive health problems. See Franklin, 662 F.2d at 1344.
 
 
 14
 Third, Denham claimed that Dr. White refused to examine his hernia following the closure of his second colostomy. The uncontroverted evidence shows that Denham was examined by prison medical staff and consulting physicians on a number of occasions following his return from surgery. Accordingly, although White failed to personally examine Denham, prison officials did not "deny, delay, or intentionally interfere with medical treatment." McGuckin, 974 F.2d at 1059.
 
 
 15
 Fourth, Denham claimed that nurses Nugent and Major treated him in a rude and unprofessional manner. Rude treatment or mere indifference, however, are not cognizable under the Eighth Amendment. See Wood, 900 F.2d at 1334 (noting that "mere negligence or isolated occurrences of neglect" are insufficient).
 
 
 16
 Finally, Denham contends that the district court erred by denying his requests for appointment of counsel and a medical expert. We are unable to conclude that Denham's likelihood of success or the complexity of the issues were so "exceptional" as to render the district court's decisions not to appoint counsel or an expert witness an abuse of discretion. See Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir.1991) (appointment of counsel); Students of Cal. School for the Blind v. Honig, 736 F.2d 538, 549 (9th Cir.1984) (appointment of an expert witness), vacated on other grounds, 471 U.S. 148 (1985).
 
 
 17
 Because we remand this case for further proceedings, Denham's Seventh Amendment claim is moot.
 
 
 18
 AFFIRMED in part, VACATED in part, and REMANDED.[3]
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. See Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Because the district court dismissed Denham's state law claims against Acosta, we do not reach them
 
 
 [2]
 On appeal, Denham claims that during his stay in the Rincon unit, prison officials confiscated the elastic bandage that held his stomach in after his surgery, and that cigarette smoke in the unit made him cough, causing his stitches to burst. Denham also appears to contend that prison officials have failed to take action to cure the resulting hernia. Because the district court has not had an opportunity to review these claims, we do not consider them at this time. See International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1404 (9th Cir.1985)
 
 
 [3]
 All pending motions are denied